## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **MORRIS GYDESEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-00216-ALT** |
| | ) | |
| **BRIAN MILLER,** *Officer*, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff Morris Gydesen brings this 42 U.S.C. § 1983 action against Fort Wayne Police Officers Brian Miller, Kevin Madden, Troy Waidelich, Jeremy Shelly, Stori Bright, David Wilkins, Will Winston, Zachary Chapman, Jason Brown, and Ariana Papaik ("Defendants" or "the Officers") in their individual capacities, alleging they used excessive force against him during his arrest following a traffic stop, or alternatively, failed to intervene to stop the use of excessive force, in violation of the Fourth Amendment.[1] (ECF 1). Plaintiff also contends that the Officers committed battery against him in violation of Indiana law, or alternatively, failed to intervene to stop the battery. (*Id.*).

Now before the Court is Defendants' motion for summary judgment, together with a supporting memorandum, statement of material facts, and exhibits, filed on August 11, 2025, in which Defendants deny they used excessive force against Plaintiff and assert they are entitled to qualified immunity, as well as immunity under the Indiana Tort Claims Act (ITCA). (ECF 21 to ECF 25). Plaintiff filed a response brief, statement of genuine disputes, and exhibits in support

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (ECF 13).

on October 8, 2025. (ECF 28, 29). Defendants filed a reply brief on October 22, 2025 (ECF 30), and thus, the motion is ripe for ruling. Having now considered the parties' arguments and evidence, Defendants' motion for summary judgment will be granted in part and denied in part.

## I. FACTUAL BACKGROUND[2]

On December 9, 2022, Officers Madden and Waidelich were patrolling traffic in the northeast area of Fort Wayne in a fully marked squad car. (ECF 22 ¶ 1; ECF 29-4 at 1).[3] At approximately 1:08am, the Officers observed a black 2022 Jeep Wrangler (the "Jeep") at the intersection of Stellhorn and Hobson roads failing to stay in its lane. (ECF 22 ¶ 2; ECF 29-4 at 1). The Officers observed the Jeep cross over the fog line and then cross over the center line. (ECF 22 ¶ 2). The Officers initiated a traffic stop. (*Id.* ¶ 3; ECF 29-4 at 1).

Officer Madden approached the Jeep from the passenger side. (ECF 22 ¶ 4; ECF 29-4 at 1-2). The passenger-side window was rolled down. (ECF 22 ¶ 5; ECF 29-4 at 1-2). Officer Madden could see that Plaintiff was the sole occupant of the Jeep. (ECF 22 ¶ 6; ECF 29-4 at 1-2). Officer Madden asked Plaintiff for his license and vehicle information. (ECF 22 ¶ 7; ECF 29-4 at 1-2). Plaintiff fumbled through his wallet and was unable to remove his driver's license from the wallet. (ECF 22 ¶ 7; ECF 29-4 at 1-2). While speaking to Officer Madden, Plaintiff's speech was slurred and his eyes were watery. (ECF 22 ¶ 7).

Suspecting Plaintiff was intoxicated, Officer Madden asked Plaintiff to exit the vehicle. (*Id.* ¶ 8; ECF 29-4 at 1-2). Instead of getting out of the Jeep as instructed, Plaintiff rolled up all the windows and locked the doors. (ECF 22 ¶ 8; ECF 29-4 at 1-2). While Plaintiff does not

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Plaintiff, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[3] The body camera worn by Officer Waidelich during the December 9, 2025, traffic stop and arrest of Plaintiff (the "Video") is of record at ECF 23. (*See* ECF 22 ¶ 27).

contest that he was intoxicated at the time (ECF 22-3 at 49-50), Plaintiff states that he rolled up the windows and locked the doors to "try[] to just gather [him]self" because his phone was "ringing continuously" and there was "a bunch of police around [him]." (*Id.* at 58; *see also id.* at 52, 57).

Officer Waidelich then approached the driver's side of the Jeep and instructed Plaintiff to unlock the doors and exit the vehicle. (ECF 22 ¶ 9; ECF 29-4 at 2). Plaintiff remained in the Jeep with his doors locked for more than one minute while the Officers continued to request Plaintiff unlock the doors and exit his vehicle. (ECF 22 ¶ 10; ECF 29-4 at 2). During that time, Officer Madden saw Plaintiff grab the gear shifter multiple times, causing Officer Madden to suspect Plaintiff may attempt to drive away. (ECF 22 ¶ 11; ECF 29-4 at 2). Plaintiff, however, had his Jeep in "park" and did not attempt to drive away. (ECF 29-4 at 2; Video 3:33-3:38). While Plaintiff was still in the Jeep, Sergeant Wilkins arrived on the scene in a fully marked squad car and in full uniform. (ECF 22 ¶ 12; ECF 29-4 at 2). Sergeant Wilkins requested backup. (ECF 22 ¶ 12; ECF 29-4 at 2).

After refusing to unlock the doors and exit the Jeep for more than one minute, Plaintiff unlocked the doors and began to open the driver's door. (ECF 22 ¶ 13; ECF 29-4 at 2; Video at 4:20-4:30). Once Plaintiff did so, Officer Waidelich grabbed the door handle to fully open the driver's door and then placed his hand on Plaintiff's left wrist. (Video at 4:20-4:32; ECF 22 ¶ 13; ECF 29-4 at 2). Plaintiff states that Officer Waidelich "pulled" him out of the Jeep "by force." (ECF 29-4 at 2-3). Officer Waidelich, however, claims that he merely "assisted" Plaintiff out of the Jeep. (ECF 22 ¶ 13). The Video shows Plaintiff step out of the Jeep while Officer Waidelich had a hold on Plaintiff's wrist. (Video at 4:28-4:39).

Once Plaintiff was outside the Jeep, Officer Waidelich and Sergeant Wilkins attempted to secure Plaintiff in handcuffs. (ECF 22 ¶ 14; ECF 29-4 at 2). Plaintiff states that he did not actively resist the Officers when they were handcuffing him. (ECF 29-4 at 2; *see* ECF 22-3 at 53). The Officers, however, claim that once one of Plaintiff's wrists was secured in handcuffs, Plaintiff "tried to twist and pull away." (ECF 22 ¶ 14). The Video is unclear in this respect. (Video at 4:35-5:15).

Officer Miller and Officer Bright arrived on the scene in a fully marked squad car and in full uniform around the time Officer Waidelich was attempting to secure Plaintiff in handcuffs. (ECF 22 ¶ 15; ECF 29-4 at 2). Officer Shelley arrived shortly thereafter in a fully marked squad car and in full uniform.[4] (ECF 22 ¶ 17; ECF 29-4 at 2). Officers Miller and Bright state that they saw Plaintiff "spin away" from Officer Waidelich. (ECF 22 ¶ 16). Officer Shelly attests that he saw Plaintiff "twisting and turning away" from the Officers attempting to secure him in handcuffs. (*Id.* ¶ 17). Plaintiff, however, "denies that his movement was resistance." (ECF 29-4 at 2; *see also* ECF 22-3 at 54). The Video is unclear as to whether Plaintiff was spinning, twisting, or turning away, or resisting the Officers. (Video at 4:35-5:15).

Plaintiff attests that two Officers then "grabbed" him and "threw [him] on the ground, bashed [his] head off the ground." (ECF 22-3 at 53; *see also* ECF 29-4 at 3). Plaintiff states that he "wasn't able to catch [him]self because [he] had handcuffs on." (ECF 22-3 at 53). Plaintiff also states that he "got kneed in the face a couple of times." (ECF 22-3 at 54; *see also* ECF 29-4 at 3). Plaintiff claims that he did not resist the Officers when they took him to the ground or when he was on the ground. (ECF 22-3 at 53-54; ECF 29-4 at 2-3). Plaintiff states that "[a]ny

---

[4] Officer Chapman, Officer Winston, and Detective Brown were not present during Plaintiff's traffic stop and arrest on December 19, 2023. (ECF 22 ¶ 28).

movement [he] made was an involuntary reaction to pain from being held down." (ECF 29-3 ¶ 6). Again, the Video is unclear as to whether Plaintiff resisted the Officers' take-down to the ground and whether Plaintiff was "kneed in the face" during the take-down. (Video at 4:50-5:10).

According to Defendants, the Officers directed Plaintiff to the ground to gain control of him due to his stature and level of intoxication. (ECF 22 ¶ 19). At the time of his arrest, Plaintiff was over six feet tall and weighed more than 200 pounds. (*Id.* ¶ 18; ECF 29-4 at 2). The Officers state that once Plaintiff was on the ground, he continued to resist arrest by trying to pull his arms away. (ECF 22 ¶ 21). Officer Shelly states that he held Plaintiff's head in place once on the ground to prevent Plaintiff from head-butting the Officers, but Officer Shelly denies that he exerted any force on Plaintiff while doing so. (*Id.*; *see* Video at 5:00-5:19).

Once Plaintiff was secured in handcuffs and on the ground, an officer can be heard stating "we got him." (ECF 22 ¶ 22; ECF 29-4 at 3; ECF 22-3 at 61-62; ECF 29-4 at 3; Video at 5:15). After that statement, Officer Shelley immediately released Plaintiff's head from pressure. (ECF 22 ¶ 23; Video at 5:14-5:19). However, within a few seconds, Officer Bright applies pressure to Plaintiff's head while Plaintiff is being held to the ground. (Video at 5:20-6:01). After approximately thirty seconds, the Officers brought Plaintiff to his feet and asked him to walk to the squad car. (ECF 22 ¶ 23; ECF 29-4 at 3). Plaintiff began to walk to the squad car but soon started to bend forward, so the Officers carried him the rest of the way. (ECF 22 ¶ 23; ECF 22-3 at 62-63). Plaintiff states that he did not walk to the squad car because he felt "dizzy and about to pass out[.]" (ECF 22-3 at 63). While being carried to the squad car, Plaintiff made the following statements: "fat ass", "fucking fat ass", "fuck you guys", and "fuck you bitch". (ECF 22 ¶ 24; ECF 22-3 at 61-63). The Video is unclear whether Plaintiff was ever "kneed in the face" during his transport to the squad car. (Video at 6:00-9:00).

Once secured in the squad car, Plaintiff was taken to Parkview Hospital for medical clearance before being transported to the jail. (ECF 22 ¶ 25). Plaintiff refused a chemical breath test at the hospital, but concedes he was intoxicated during his traffic stop and arrest on December 9, 2022. (*Id.* ¶ 26; ECF 22-3 at 49-50).

Plaintiff sustained facial contusions, abrasions, a concussion, and dizziness from the incident. (ECF 29-4 at 3; ECF 29-3 at 1; *see* ECF 29-1). He sought care at St. Joseph's Hospital the day after his arrest for ongoing dizziness, facial swelling, and head pain. (ECF 29-4 at 3; ECF 29-3 ¶¶ 8-9). Plaintiff's primary care provider, Nurse Practitioner Andrea Boley, treated him after the incident, issued work restrictions, and provided a note excusing him from work from December 15 to 27, 2022. (ECF 29-4 at 3; ECF 29-3 ¶ 10). The charge of resisting law enforcement against Plaintiff was later dismissed. (ECF 29-4 at 3).

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Payne*, 337 F.3d at 770. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citation omitted).

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770 (collecting cases). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (quoting *Waldridge v. Am. Hoechst Corp.*,

6

24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Id.*

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted); *see also Ballance*, 424 F.3d at 616. However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Payne*, 337 F.3d at 771 (citation omitted); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (instructing that in determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts" (citation omitted)).

### III. DISCUSSION

#### A. Plaintiff's Claims Against Officer Chapman, Officer Winston, and Detective Brown

Defendants first contend that the evidence shows Officer Chapman, Officer Winston, and Detective Brown were not present at Plaintiff's traffic stop and arrest on December 9, 2022, and thus these officers could not have used excessive force, or otherwise intervened to prevent the use of excessive force, against him. (ECF 24 at 5). As such, Defendants assert that the § 1983 excessive force and state-law battery claims, and the failure-to-intervene claims, against these three Defendants fail as a matter of law. Plaintiff does not respond to this argument, and thus, apparently does not disagree. *See Shreffler v. City of Kankakee*, No. 19-CV-2170, 2021 WL 6200764, at *14 (C.D. Ill. Sept. 28, 2021) ("By failing to respond, the court finds Plaintiff has waived any arguments against Defendants' summary judgment arguments on these claims, and thus the court may infer Plaintiff has conceded those arguments." (citation omitted)). Therefore,

Defendants' motion for summary judgment will be granted as to Plaintiff's claims against Defendants Chapman, Winston, and Brown.

### B. Plaintiff's § 1983 Excessive Force Claims

Defendants seek summary judgment in their favor on Plaintiff's § 1983 excessive use of force claim, arguing the undisputed evidence shows that any force used by the Officers during Plaintiff's arrest was reasonable. (ECF 24 at 8-13). Defendants further claim they are entitled to qualified immunity on Plaintiff's § 1983 claims. (*Id.* at 13-15).

1. <u>Applicable Law</u>

A claim of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Scott*, 550 U.S. at 381. This gives rise to the overarching question, "whether [the officers'] actions were objectively reasonable." *Scott*, 550 U.S. at 381. Answering this question requires careful consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted).

At bottom then, the inquiry focuses on whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id*. at 397 (citations omitted). This means that the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). Thus, a "police officer's use of force is unconstitutional if, judging from the totality of the circumstances

8

at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (citation and internal quotation marks omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (stating that the court must look to whether the totality of the circumstances justified the seizure).

    2. <u>The Parties' Arguments</u>

Defendants argue that the three *Graham* factors weigh in their favor here because "[w]hen a person in a vehicle is unresponsive to officer[s'] commands, it is reasonable for officers to use force to remove the person from the vehicle and secure the person in handcuffs." (ECF 24 at 10 (citation omitted)). Defendants contend this case is similar to the facts presented in *Smith v. Ball State University*, where the Seventh Circuit Court of Appeals concluded the officers' use of force was reasonable. 295 F.3d 763, 771 (7th Cir. 2002). Plaintiff, however, contends none of the *Graham* factors favor Defendants because "[t]he alleged offense was a minor traffic violation; Plaintiff was unarmed and surrounded by multiple officers; and the evidence on resistance is sharply disputed." (ECF 28 at 3). Plaintiff argues that this case is more akin to the facts in *Gupta v. Melloh*, where the Seventh Circuit found that a reasonable jury could conclude that the officers' use of force against the intoxicated plaintiff was excessive. 19 F.4th 990, 999-1000 (7th Cir. 2021)

    a. *Smith v. Ball State University*

In *Smith*, cited by Defendants, the plaintiff experienced diabatic shock while driving and became unresponsive, lost control of his vehicle and drove on to the sidewalk, and nearly struck several pedestrians. 295 F.3d at 766. A bus driver who witnessed the incident contacted the police and reported a possible drunk driver. *Id.* A second witness also contacted the police, stating that the driver was incoherent and that they should send an ambulance. *Id.* When police

arrived, the officers opened the passenger door, turned off the vehicle's ignition, and asked Smith to exit the vehicle, but Smith was unresponsive. *Id.* Two officers then forcibly attempted to remove Smith from the vehicle. *Id.* While they were doing so, a third officer arrived and perceived that Smith and the officers were engaged in a struggle, so he attempted to apply a "knee strike" to Smith's leg. *Id.* However, the officer slipped when doing so and instead tackled Smith and the two officers. *Id.* The three officers then held Smith's face to the ground and handcuffed him. *Id.* at 766-67. As a result of the encounter, Smith sustained scratches and bruises on his face, marks on his wrists, and a marble-sized bump to his head. *Id.* at 767.

The Seventh Circuit found that the force used in *Smith* was reasonable because the officers believed Smith was a potential threat to public safety as an intoxicated driver and that he was actively resisting. *Id.* at 770-71. The Court explained that the officers were entitled to order Smith to exit his vehicle, and when he failed to do so, they were justified in using force to remove him, "particularly given the potential threat to public safety of an intoxicated driver in command of a running vehicle." *Id.* at 770. While the Court "accept[ed] as true the fact that Smith was not actively resisting, a reasonable officer who happened on the scene could reasonably misconstrue Smith's unresponsiveness as resistance requiring the minimal use of force." *Id.* at 771. As such, the Court concluded the officers' actions did not violate Smith's Fourth Amendment rights. *Id.*

b. *Gupta v. Melloh*

In *Gupta*, cited by Plaintiff, the plaintiff was highly intoxicated and struggling to use his key to open the lobby door of a hotel. 19 F.4th at 995.[5] Gupta began yelling at the front door

---

[5] Plaintiff claims in his brief that *Gupta* involves "the plaintiff [being] pulled from his vehicle during an impaired-driving stop, partially handcuffed, and then taken to the ground and struck" (ECF 28 at 4), but Plaintiff is mistaken.

clerk, who refused to open the door and instead called the police. *Id.* Upon the officer's arrival, it was readily apparent to the officer that Gupta was quite intoxicated, as Gupta had overturned a brochure rack, was unsteady on his feet and slurring his speech, and needed to hold on to a counter to keep from falling. *Id.* The officer asked Gupta to place his hands behind his back, and Gupta complied and was handcuffed without resistance. *Id.* A second officer arrived on the scene and supervised Gupta while the first officer went to speak to the hotel clerk. *Id.* The second officer stated that he repeatedly asked Gupta to come outside but Gupta refused and did not move, so the officer placed his hand on Gupta's arm and started to walk toward the door urging Gupta to follow along. *Id.* The officer claimed that Gupta then stiffened his body and jerked away from the officer, at which point the officer concluded Gupta was resisting arrest and gave Gupta a more forceful tug to get him out the door. *Id.* Gupta denied that he resisted the officer. *Id.* In any event, as the officer forcefully pulled on Gupta's arm, Gupta hurtled forward and hit the floor face down because his handcuffed arms could not break his fall. *Id.* The officer then drug Gupta out the door. *Id.* Gupta sustained a fracture of his C5 vertebra and had blood in his nose and mouth. *Id.*

The Seventh Circuit in *Gupta* found that a material dispute of fact existed about the "critical moment"—which "last[ed] only seconds"—when the officer placed his hand on Gupta's arm and pulled him forward. *Id.* at 997. Gupta claimed that he was not resisting and that the extent of his impairment was obvious. *Id.* at 999. The officer alleged, however, that Gupta was resisting arrest and that he had no reason to know how unsteady Gupta was, so the force applied to move Gupta was reasonable. *Id.* A video existed of the encounter but it was inconclusive. *Id.* at 998. The Court found that depending on which side's facts were credited, "that pull was either an appropriate and reasonable use of force to subdue an actively resisting suspect or was an

unreasonable and excessive use of force against a passive, compliant, intoxicated suspect whom the police made vulnerable to injury by handcuffing his hands behind his back." *Id.* at 997-98. Accordingly, the Court overturned the district court's entry of summary judgment due to the contested factual determinations. *Id.* at 1000.

During its qualified immunity analysis, the Seventh Circuit considered that Gupta's alleged crime of "public drunkenness" was not all that severe, and while Gupta was obnoxious and had caused some mess in the lobby, he had "quickly and readily succumbed to handcuffing." *Id.* at 1001. The Court noted that Gupta did not pose a threat to the officers or others because he was handcuffed with his hands behind his back and no one else was in the immediate vicinity. *Id.* In doing so, the Court explained that "significant force is unreasonable after a suspect is subdued or has stopped resisting or evading arrest or is, at most, passively resisting arrest." *Id.* (citing *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014)).

3. Analysis

Defendants argue that, like in *Smith*, it was reasonable for the Officers to use some force to secure Plaintiff in handcuffs because the Officers had reason to believe Plaintiff was a threat to public safety and "actively resisting arrest at the time force was used." (ECF 24 at 11). Plaintiff denies that he was a threat to public safety and that he was resisting arrest, but does not dispute that the Officers had reason to believe he was intoxicated during the stop and arrest, or that he was, in fact, intoxicated at the time. (*See* ECF 29-3 at 1; ECF 29-4 at 3; ECF 22-3 at 49-50).

As to the first *Graham* factor, severity of the crime at issue, Plaintiff describes driving while intoxicated as a "minor traffic violation" but cites no caselaw, other than *Gupta*, in support of this premise. (*See* ECF 28 at 3-5). *Gupta* is not persuasive on this point, given that it involved the crime of public drunkenness, not driving while intoxicated. Further, various courts have

recognized the severity of the crime of driving while intoxicated. *See, e.g.*, *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 860 (8th Cir. 2015) (finding the severity of the crime—driving while intoxicated—weighed against the plaintiff in assessing the reasonableness of the officers' use of force, where the driver appeared impaired and failed to comply with the officers' orders to exit the vehicle); *Ellis v Timm*, 504 F. Supp. 3d. 726, 735 (N.D. Ohio Nov. 30, 2020) (noting that generally the crime of driving while intoxicated "is treated as moderately severe" (collecting cases)); *Golden v. Austin Cnty. Sheriff's Dep't*, No. H-09-817, 2010 WL 3909476, at *8 (S.D. Tex. Sept. 30, 2010) (referring to driving while intoxicated as a crime "moderate in severity"); *Taylor v. Moore*, 383 F. Supp. 3d 91, 99 (D. Mass. June 6, 2019) (finding that the severity of the crime weighed slightly in the defendants' favor because while drunk driving is a serious offense, once the plaintiff was pulled from the car, she was no longer able to drive away while intoxicated). This first factor weighs to some extent in Defendants' favor.

Plaintiff challenges the second *Graham* factor—whether the suspect poses an immediate threat to the safety of the officers or others—by arguing he was "compliant and unarmed" and "surrounded by multiple officers[.]" (ECF 28 at 3). Yet, Plaintiff does not dispute that he was weaving between lanes when the Officers pulled him over at 1:08am, that he stopped his Jeep in the middle of a lane, and that he failed to immediately comply with the Officers orders to exit the vehicle. Nor does Plaintiff contest the reasonableness of Officer Waidelich's concern that Plaintiff may attempt to drive off, given that Plaintiff's hand was on the gear shift and he failed to immediately exit the Jeep when ordered to do so. In *Smith*, the Seventh Circuit specifically acknowledged "the potential threat to public safety of an intoxicated driver in command of a running vehicle." 295 F.3d at 770; *see also Jones v. City of Fort Wayne*, No. 1:15-CV-093 JD, 2017 WL 1059015, at *4 (N.D. Ind. Mar. 21, 2017) ("Officer Bonar . . . repeatedly instruct[ed]

Mr. Jones to get out of the car, but Mr. Jones did not comply. At that point, the officers had reason to believe Mr. Jones was intoxicated, and he was seated in the driver's seat of a running vehicle, with his hands on the wheel, and refused to exit the vehicle. This presented a dangerous situation, and it could have escalated quickly if Mr. Jones had begun to drive . . . ."). Therefore, the second *Graham* factor, too, weighs in Defendants' favor.

The third *Graham* factor—whether the suspect is actively resisting arrest or attempting to evade arrest by flight—is less clear here. Defendants claim that Plaintiff resisted arrest during the encounter by: (1) ignoring the Officers' commands to exit the vehicle for more than one minute; and (2) "turning and spinning away" from the Officers when they attempted to handcuff him. (ECF 24 at 12). As to the first point, Plaintiff does not dispute that he failed to comply with the Officers' commands to unlock the doors and exit the Jeep for at least one minute. (ECF 29-4 at 2). Plaintiff denies, however, that he turned and spun away or otherwise resisted the Officers when they attempted to handcuff him after he exited the Jeep. (*Id.*). And as stated earlier, the Video is not definitive as to whether Plaintiff turned and spun away or otherwise resisted the Officers when they attempted to handcuff him. (Video at 4:35-5:15). Therefore, a material dispute of fact exists regarding whether Plaintiff resisted the Officers when they attempted to handcuff him.

Defendants further argue that a reasonable jury could only find the force the Officers used to secure Plaintiff in handcuffs was reasonable under the totality of the circumstances. (ECF 24 at 12). The Officers claim the only force applied was their "open hands to hold Plaintiff in place while he was being handcuffed[,]" and that they stopped applying force as soon as Plaintiff was secured in handcuffs. (*Id.*). Plaintiff, however, claims that he was already "handcuffed and entirely subdued" (ECF 28 at 4; *see* ECF 29-3 ¶¶ 5-7, 13) when the Officers "slammed him face-

first to the pavement" and "one officer had his knee on his neck and another was holding his head down" (ECF 29-4 at 3 (brackets omitted)). Again, the Video is not definitive as to the parties' movements during the Officers' handcuffing and take-down of Plaintiff. (*See* Video at 4:35-6:05).

As in *Gupta*, depending which side's facts are credited, the force applied by the Officers "was either an appropriate and reasonable use of force to subdue an actively resisting suspect or was an unreasonable and excessive use of force against a passive, compliant, intoxicated suspect whom the police made vulnerable to injury by handcuffing his hands behind his back." 19 F.4th at 997-98. "[A] police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Hayes v. City of Indianapolis*, No. 1:08-cv-006-DFH-JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) (collecting cases). "Even 'one violent push and poke' will constitute excessive force when there is no provocation." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 475-76 (7th Cir. 1997)); *see also Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996); *Fabiszak v. Town of Cedar Lake, Ind*., No. 2:23-CV-234-TLS, 2025 WL 2613445, at *11 (N.D. Ind. Sept. 9, 2025); *Norris v. Bain*, No. 1:04-CV-1545DFHTAB, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006); *Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995). Therefore, material disputes of fact preclude the entry of summary judgment on Plaintiff's § 1983 excessive force claims.

### C. Plaintiff's § 1983 Failure-to Intervene Claims

Defendants also seek summary judgment on Plaintiff's § 1983 failure-to-intervene claims, but do not advance arguments specific to these claims. Instead Defendants simply assert that "because Plaintiff's excessive force claim fails as a matter of law, Plaintiff's failure to

intervene claim predicated on his excessive force claim also fails as a matter of law." (ECF 24 at 13).

"A police officer 'has a duty under § 1983 to intervene to prevent . . . the use of excessive force if the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it.'" *Smith v. Hunt*, No. 08 C 6982, 2010 WL 3842374, at *6 (N.D. Ill. Sept. 27, 2010) (internal quotation marks omitted) (quoting *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008)). Therefore, an officer "who is present and does not intervene to stop other officers from infringing the constitutional rights of citizens is liable under § 1983 if the officer had reason to know 'that excessive force was being used, . . . *and* the officer had a realistic opportunity to prevent the harm from occurring.'" *Id.* (second alteration in original) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

As concluded earlier, after viewing the facts in the light most favorable to Plaintiff and affording him all reasonable factual inferences, a reasonable jury could conclude that the force the Officers used to effect Plaintiff's arrest was excessive under the circumstances. According to Plaintiff, he did not resist the Officers when handcuffing him after he stepped out of the vehicle, which would render the take-down, slam of his face into the pavement, the hold of his head down, and the knee in his neck all unreasonable and therefore excessive. If a jury believes Plaintiff's testimony, it could reasonably conclude that one or more Officers at the scene had reason to know that other Officer(s) were using excessive force against Plaintiff. *See id.* at *8.

Similarly, a reasonably jury could find that one or more Officers had a realistic opportunity to intervene to prevent the use of excessive force. "A 'realistic opportunity to intervene' exists whenever an officer 'could have called for a back up, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Id.* at 9 (quoting *Abdullahi v. City of*

*Madison*, 423 F.3d 763, 774 (7th Cir. 2005)). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonably jury could not possibly conclude otherwise." *Id.* (quoting *Abdullahi*, 423 F.3d at 774). Here, viewing the facts in the light most favorable to Plaintiff and affording him all reasonable inferences, a reasonably jury could conclude that one or more Officers had time to intervene and were capable of preventing the other Officers from using excessive force. *See id.* Therefore, as with Plaintiff's § 1983 excessive force claim, material disputes of fact preclude the entry of summary judgment on Plaintiff's § 1983 failure-to-intervene claims.

### D. Qualified Immunity

Defendants argue that even if the Court finds there is a question of fact as to whether the Officers' actions violated Plaintiff's Fourth Amendment rights, they are entitled to qualified immunity from Plaintiff's claims. (ECF 24 at 13-15). "The doctrine of qualified immunity shields from liability public officials who perform discretionary duties." *Chelios v. Heavener*, 520 F.3d 678, 690-91 (7th Cir. 2008) (citation omitted). "Qualified immunity shields from liability police officers 'who act in ways they reasonably believe to be lawful.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). A two-part test is applied to determine whether the doctrine attaches: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (citing *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008); *see Manery v. Lee*, 124 F.4th 1073, 1079-80 (7th Cir. 2025) (stating that these two questions may be addressed in either order). A plaintiff may defeat a qualified immunity defense by "pointing to

17

a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights."[6] *Wheeler*, 539 F.3d at 639 (brackets, citations, and internal quotation marks omitted); *see also Manery*, 124 F.4th at 1080; *Smith*, 242 F.3d at 742; *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999).

Here, Defendants again rely on *Smith* in support of their qualified immunity argument, asserting that it "supports the use of force to secure a suspect in handcuffs when the suspect refuses to comply with officers [sic] commands." (ECF 24 at 15 (citing *Smith*, 295 F.3d at 770-71)). But viewing the facts in the light most favorable to Plaintiff and affording him every reasonable inference, *Smith* is not sufficiently analogous to the instant circumstances. In *Smith*, the plaintiff was unresponsive due to diabetic shock and had to be forcibly extracted from the vehicle. 295 F.3d at 765. Here, Plaintiff ultimately complied with the Officers' commands to exit the Jeep—albeit after at least a one-minute delay—by unlocking and opening the doors and stepping out of the vehicle at least to some extent on his own accord. (*See* Video 4:15-4:40). Therefore, *Smith* is not sufficiently analogous to Plaintiff's version of the facts.

At the time of Plaintiff's arrest, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." *Holmes v. Vill. of Hoffman Ests.*, 511 F.3d 673, 687 (7th Cir. 2007); *see Norris v. Bain*, No. 1:04-CV-1545DFHTAB, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006) ("Well before the time of [the plaintiff's] arrest, the Seventh Circuit made clear that police officers do not have the right to inflict 'wholly gratuitous' force on

---

[6] The Seventh Circuit has recognized that the excessive force standard is "well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *DuFour-Dowell*, 969 F. Supp. at 1120-21 (citing *Lanigan*, 110 F.3d at 476-77). "However, the Seventh Circuit has left open the possibility that the applicable law may be sufficiently unsettled to justify application of the defense in a particular case." *Id.* (citing *Lanigan*, 110 F.3d at 477).

a subdued suspect who was not resisting arrest." (citing *Clash*, 77 F.3d at 1048)). Accepting as true Plaintiff's contention that he did not offer any physical resistance to being handcuffed when he stepped out of the Jeep, the Officers could not have reasonably thought that the gratuitous force they employed—taking Plaintiff down to the ground, slamming his head into the road and holding it there, and kneeing him in the neck—was justified. "It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Hayes*, 2009 WL 700232, at *4 (collecting cases); *Fabiszak*, 2025 WL 2613445, at *11; *Norris*, 2006 WL 753131, at *14; *Hill*, 878 F. Supp. at 116. Therefore, Defendants' motion for summary judgment on the basis of qualified immunity will be DENIED due to the material disputes of fact at issue.

### E. Plaintiff's State-Law Battery Claims

Defendants also move for summary judgment on Plaintiff's state-law battery claims,[7] asserting that these claims are barred by the ITCA because Defendants were acting within the scope of their employment during Plaintiff's arrest. (ECF 24 at 6-7). Plaintiff, however, contends that law enforcement immunity does not extend to excessive force claims. (ECF 28 at 6).

Indiana Code § 34-13-3-5(b), which "applies only to a claim or suit in tort[,]" Ind. Code § 34-13-3-1, provides that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code. § 34-13-3-5(b). "When an employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment."

---

[7] "Under Indiana law, 'a law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to enforce a criminal law or to effect a lawful arrest.'" *Fabiszak*, 2025 WL 2613445, at *15 (brackets omitted) (quoting Ind. Code § 35-41-3-3(c)). "If an officer uses unnecessary or excessive force, the office may commit the torts of assault and battery." *Id.* (collecting cases). "Indiana's excessive force standard effectively parallels the federal Fourth Amendment standard . . . ." *Id.* (citation and brackets omitted).

*McAllister v. Town of Burns Harbor*, 693 F. Supp. 2d 815, 822 (N.D. Ind. Jan. 15, 2010) (citation omitted). Here, the Officers argue they were acting within the scope of their employment by operating a marked car, wearing police uniforms, and encountering Plaintiff during a traffic stop or in response to a request for back up. (*See* ECF 24 at 7); *see McAllister*, 693 F. Supp. at 822-23 (concluding that the defendant officer's conduct was undeniably of the same general nature as his everyday duties as a law officer where he was in uniform, in a marked car, responding to a dispatch call concerning a traffic accident and possibly a drunk driver).

In response, Plaintiff, relying on *Wilson v. Isaacs*, 929 N.E.2d 200 (Ind. 2010), asserts that "law-enforcement immunity does not extend to excessive force claims." (ECF 28 at 6). Plaintiff does not otherwise dispute Defendants' assertions that the Officers were acting within the scope of their employment by operating a marked car, wearing police uniforms, performing a traffic stop and arrest, and requesting back up. (*See id.*); *see generally Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (citation omitted)).

In reply, Defendants seemingly concede that law-enforcement immunity does not apply to use of excessive force. (ECF 30 at 10).[8] Given the parties' apparent agreement on this point,

---

[8] The case law, however, is somewhat mixed as to whether law-enforcement immunity extends to claims of excessive force against officers in their individual capacity. In *Wilson*, the Indiana Supreme Court held that the ITCA did not shield the sheriff's office from liability, but affirmed summary judgment on the plaintiff's claims against the deputy individually. 929 N.E.2d at 203-04; *see also Fabiszak*, 2025 WL 2613445, at *15 (concluding that under the ITCA the plaintiff's state-law battery claims survived against the town defendant, but not the individual officers); *Est. of Northington v. City of Indianapolis*, No. 1:21-cv-00406-RLM-TAB, 2023 WL 11970037, at *6 (S.D. Ind. Mar. 31, 2023) (granting summary judgment on the plaintiff's state-law battery claims against the individual officers and distinguishing *Wilson* and similar cases, stating that "[a]ll of those cases were suits against the Sheriff's office, police department, or city — not the individual officers); *Watts v. McSherry*, No. 1:12-CV-137, 2013 WL 5498254, at *7 (N.D. Ind. Oct. 2, 2013). However, other courts have not made such a distinction, denying law-enforcement immunity to individual officers and entities alike on excessive force claims. *See, e.g., Est. of Pearson ex rel. Pearson v. City of Fort Wayne, Ind.*, No. 1:13-CV-332 RLM, 2015 WL 4425981, at *13 (N.D. Ind. July 20, 2015); *Richmond v. Swinford*, No. 2:12-CV-243 RM, 2012 WL 5903808, at *4 (N.D. Ind. Nov. 26, 2012); *Lacy v. City of Indianapolis*, No. 1:09-cv-1484-SEB-MJD, 2011 WL 5509844, at *8 (S.D. Ind. Nov. 10, 2011). Given that Defendants did not

and the Court's prior conclusion that a material dispute of fact exists as to whether the Officers

used excessive force, Defendants' motion for summary judgment on Plaintiff's state-law battery

claims will also be denied at this juncture.

### F. Plaintiff's State-Law Failure-to-Intervene Claims

Defendants also seek summary judgment on Plaintiff's state-law claim "that Defendants

failed to intervene to prevent other officers from committing battery against Plaintiff." (ECF 24

at 4-5). Indeed, Plaintiff appeared to articulate such a claim in his complaint when alleging that

the Officers "committed battery on the Plaintiff by body slamming his face into the concrete

during his arrest or by failing to prevent other officers from doing so." (ECF 1 ¶ 2).

But Plaintiff has not cited any legal authority recognizing a cause of action under Indiana

law for the failure to intervene to stop a battery. Nor has the Court located such authority in its

own research. *See Franklin v. Randolph Cnty. Comm'rs*, No. 1:18-cv-01340-JMS-DML, 2019

WL 3037181, at *10 (S.D. Ind. July 11, 2019) ("The Franklins have not identified any statute or

case recognizing a cause of action under Indiana law for the failure to intervene to stop excessive

force, and the Court's independent research has not revealed any such authority. As such, the

Court finds that Indiana law does not provide a cause of action for an officer's failure to

intervene to stop excessive force . . . ."). Therefore, to the extent Plaintiff is advancing a failure-

to-intervene claim under Indiana law, summary judgment will be granted in Defendants' favor on

this claim.

---

raise this argument and instead seemingly conceded to Plaintiff's point, the Court need not take up the issue at this
juncture. *See Dunkin' Donuts Inc. v. N.A.S.T. Inc.*, 428 F. Supp. 2d 761, 775 (N.D. Ill. 2005) ("It is not this Court's
job to make parties' arguments for them . . . .").

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF 21) is GRANTED as to: (1) Plaintiff's claims against Defendants Chapman, Winston, and Brown; and (2) Plaintiff's failure-to-intervene claims advanced under Indiana law against all Defendants. The motion for summary judgment (ECF 21) is OTHERWISE DENIED. The Court will set this case for a scheduling conference via separate entry.

SO ORDERED.

Entered this 27th day of January 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge